ALBERT SCHMIDT, Appellee, v. FRAUKE SCHMIDT, Appellant.

Trusts: BURDEN OF PROOF: EVIDENCE. To establish a trust and compel an accounting for the proceeds of land conveyed by plaintiff to defendant, on the ground that the conveyance was procured by fraud and undue influence, the burden is upon the plaintiff to show such a relation of special trust and confidence as will overcome the presumption that the conveyance was made for the purpose therein expressed. Evidence held insufficient to sustain this burden and to show that the conveyance was the result of the fraudulent and inequitable conduct of defendant.

*Appeal from Butler District Court.*—HON. J. F. CLYDE, Judge.

TUESDAY, MARCH 14, 1911.

ACTION in equity for an accounting. Decree for plaintiff, and defendant appeals. The opinion states the material facts.—*Reversed* and *remanded.*

*Ward & Williams* and *Edwards & Gregory*, for appellant.

*C. L. Hays* and *W. T. Evans*, for appellee.

WEAVER, J.—Carl Schmidt, husband of appellant and father of plaintiff, died intestate October 29, 1891. At the time of his death he held the title to one hundred and sixty acres of land, on which he resided with his family, and an additional timber or brush tract of nine acres. His sur-

viving family consisted of the defendant, his widow, and six children—Christian, Albert, Carl, August, Herman, and Caroline. The family continued to reside on the farm for some years, the number diminishing as the older children went out to make homes for themselves. On January 23, 1900, the four older children, Christian, Albert, Carl, and August, describing themselves as four of the six heirs at law of Carl Schmidt, deceased, and owners each of an undivided one-ninth of the land, united in making a warranty deed to their mother of their several interests in the farm tract of one hundred and sixty acres above mentioned for the expressed consideration of $1 and love and affection. This land the mother continued to use, occupy, and control either in person or by tenant until the year 1907, when she sold it for $14,500. The nine-acre tract was sold February 14, 1904; the defendant and her children uniting in the conveyance. The money received on this sale, $285 less certain expenses attending the perfecting of the title, was retained by defendant. Soon after the death of her husband, defendant was appointed administratrix of his estate. At the January term, 1902, of the Hardin County district court, after due notice to the plaintiff, she made her final report, which was duly approved, and she was ordered discharged. This action was begun April 16, 1909. In his pleadings plaintiff alleges, in substance, that he inherited from his father an equal one-ninth part in the lands above mentioned as well as in the personal estate; that by reason of his youth and inexperience he was not aware of his rights in the premises; that his mother at all times studiously withheld and concealed from him all knowledge and information that he was entitled to share in said estate; that very soon after he arrived at his majority, being still ignorant of his said rights, and defendant still withholding and concealing said information, he was led by her to unite in the conveyance of January 23, 1900, to which reference has been made;

but that in making the same he supposed it to be some mere matter of form and did not suppose or know that he was deeding away any valuable right or interest. He further alleges that up to said date he had been a member of defendant's family relying and depending on her for guidance, advice, and direction, and that she took advantage of this confidential relation and of his confidence in her to obtain this conveyance of his share in his father's estate without good or valuable consideration. In a second count of his petition, he alleges that for fifteen years his mother had received and enjoyed the use, rents, and profits of the land of which his father had died seised, and asks for an accounting thereof and that he be allowed to recover a one-ninth part with interest at annual rests. In a third count, he charges that defendant never properly accounted for the personal property coming into her hands as administratrix of his father's estate, and for his share in such property he also asks a recovery. In a fourth count, he alleges a sale of the nine-acre tract of land and demands his equal one-ninth share of the proceeds.

The defendant denies all plaintiff's allegations of wrong, fraud, and concealment on her part. She alleges that at the date of her husband's death the plaintiff was nearly sixteen years of age, and admits that he inherited a one-ninth share in the estate of Carl Schmidt, deceased, subject to the debts and incumbrances chargeable thereon. She further alleges that at the date of her husband's death he was indebted for the full amount of the purchase price of the land then held in his name; that the six children of their marriage were then all minors; that she thereupon took up the burden of caring for her children and paying for the land, and succeeded in doing so; and that the subsequent conveyance of the title to her was made and executed by her children without fraud or undue influence and with full knowledge of the nature and legal effect of the transaction. She also pleads the statute of frauds

and the statute of limitations, as well as her settlement and discharge as administratrix of the estate. The trial court found the evidence sufficient to impress the proceeds of the sale of the lands in the hands of the defendant with a constructive trust in favor of plaintiff to the amount of $1,550, for which sum a personal judgment was rendered.

As will be seen, the case presents practically the aspect it would bear if the mother had not disposed of the land and the son was in court asking to have his conveyance to her set aside for fraud or undue influence in its procurement. The conveyance is admitted, and, in order to avoid it, the burden is upon the grantor to clearly establish the alleged fraud, or to show such relation of trust and confidence between himself and the grantee that equity will cast upon her the burden of showing the good faith of the transaction. Perceiving the force of this suggestion, appellee alleges in his petition, and his counsel assert in argument, that almost as soon as he arrived at age, and while he was still a member of the family and under the immediate influence and control of the appellant, and in ignorance of his rights, she procured the deed from him without consideration. Assuming, without deciding, that this claim, if true, discloses a relation of trust and confidence which would require defendant to prove the good faith of the transaction, the fact of the age of the appellee at the date of the deed becomes one of material consideration. Unfortunately the record in this respect is confusing. In one place plaintiff is made to say that he was born December 1, 1872, and if this be correct he was at least twenty-seven years old when he made the deed. In the list of heirs of Carl Schmidt, deceased, filed in the probate records December 12, 1891, his age is given at fifteen years, which would show his age at the date of the deed to be over twenty-three years. Again he testified that when his father died in October, 1891, he was fourteen years old. This, if literally true, would show his age when he executed the

deed to have been at least twenty-two years and three months.    Our own conclusion from the record is that he was fifteen years old December 1, 1891, which would fix his age when he conveyed the land at something more than twenty-three years, or over two years after he had reached his majority.    It seems to us perfectly clear that at this date he had been completely emancipated from parental control, and that there is an entire absence of evidence fairly tending to show the existence of any relation of special trust and confidence between the parties not ordinarily existing between mother and adult son, or that appellant then had or exercised over appellee such dominating influence that her acceptance of a deed from him imposes upon her the burden of negativing fraud.    On the contrary, it appears that beginning when he was eighteen or nineteen years of age appellee began taking employment in the service of neighboring farmers, and, that while he placed a large share of his earnings in the hands of his mother, this was repaid to him when he reached his majority and began life for himself upon a rented farm which he conducted on his own account for a term of five years. At the end of this period, he had by his industry and thrift accumulated a good supply of horses, mules, and cattle and $1,500 in money, with which in the year 1904 or 1905 he removed to South Dakota, where he purchased a farm and still resides.    It is true that he testifies to the extent of his confidence in his mother, and that he relied upon her direction and advice in his business and personal affairs; but the facts and circumstances which he details show nothing more than that this woman, with the instinct and the affection of a mother, manifested a continuing interest in her son and his affairs, made a home for him whenever he returned to the shelter of the parental roof, mended his clothes, and attended to his personal wants and comforts.    If these things are to be stored up in the memory of a child only as evidence of a deep design on the part of

the mother who gave him birth to defraud her own off-spring, then indeed are the sorrows of maternity multiplied beyond power of expression.

Neither are we impressed with the showing of the appellee's ignorance of the nature and extent of his interest in his father's estate. A son's right to inherit from a parent dying intestate is a matter of such general and familiar knowledge that it is hardly possible to conceive of a boy of average intelligence arriving at his majority ignorant of the general legal principle governing such cases. It is not a matter of technical learning. In its essential features it is a part of the common understanding of the people of every rank, class, and grade. Appellee may not be a man of the highest order of intellect; but his thrift and prosperity demonstrate his business capacity and shrewdness, while his testimony, as shown by the record, indicates no serious lack of mental quality. Indeed, his claim of ignorance concerning his rights as an heir of his father is to a great extent neutralized by his own admissions. Among other things, he says that when he was nineteen years old his mother told him she thought it would be best to sell the farm, and that in such case she would pay the children each $500 and lend them the remainder on interest so they could each buy a farm while land was cheap. The suggestion was not acted upon, which was perhaps fortunate, in view of the subsequent increase of the property in value. Moreover, it is impossible to believe that this careful, frugal, saving young man of twenty-three could have gone through the form of executing and delivering a warranty deed of his own one-ninth interest in this land without any idea of the nature and effect of the transaction. His story is that on the day in question he, with his three brothers, went to town for the purpose of having their photographs taken, and while there Christian asked or suggested that they "go up to Mr. Ward's office and sign those papers." This he claims was his first knowledge

that any papers were to be made, yet he does not pretend that he asked any explanation, or that he asked to have the instrument read to him. He does not deny that it was in fact read to him, but says in substance that he does not remember what happened in the office except that he there signed the deed with his brothers. Aside from some corroboration by Carl Schmidt, who we understand makes a similar claim against his mother, the testimony as a whole strongly discredits his story. Christian, the older brother, says that their father, being fatally injured and conscious of approaching dissolution, said to him and others of the family, in substance, that the property he was leaving was scarcely more than was necessary to pay his debts, and that if anything was left he wished his wife to have it, and that if possible she should keep the land and maintain the family unbroken. According to the witness, the request of the dying father was remembered and made the subject of frequent conversation between the children, who all cherished the purpose at some time to carry it into effect by proper conveyances. He further says that but a few days before the deed was made he spoke to appellee about it, and it was understood that within a few days they would go to town to get their photographs and would at the same time have the deed made. This is denied by the appellee, but the story he himself tells goes far to discredit his denial. The manner in which he says Christian suggested that they go to Ward's office and "make those papers" or "sign those papers" clearly indicates that the matter had been the subject of previous conversation, and his further admission that he went at once and did it without demanding further explanation is quite convincing proof that he knew what the purpose was and what he was doing. Christian's version of the situation and of the circumstances attending the conveyance is strongly supported by the testimony of the brother August, who was present and executed the deed at the same time. The younger

brother, Herman, was not present when this deed was made, but later executed a separate conveyance to his mother.

We shall not extend this opinion to detail the appellant's own story, for we are persuaded that, giving the testimony offered by the appellee and on which he relies the utmost weight to which it is reasonably entitled, it falls far short of that clear and convincing character which equity demands for the foundation of a constructive trust. It is far easier as it is far more creditable to human nature to believe that these sons of a widowed mother, feeling the weight of the moral obligation imposed upon them by the request of their dying father, and recognizing their indebtedness to her for care, nurture, and support, voluntarily united in making this deed, thereby securing to her a comfortable support for the remainder of her life, than it is to believe that the mother by a system of concealment and deception reared her children in ignorance of their rights, in order to mould them to her will and secure from them a surrender of their patrimony. The transaction was in itself neither unfair nor inequitable. She had taken hold of the property when it was loaded with debt. By her management and labor, aided of course by her children, the debts had been paid and the family kept intact until its younger members were able to care for themselves. These five stalwart young men did not need the property. They could make their way in the world without it. Their mother did need it. The prime of her life and strength had been given to their rearing. Age and its infirmities were for her already in sight, and their act in thus insuring her against the ills of a dependent old age is one of such commendable nature that it is much to be regretted that any of them should have repented it. Moreover, while the title to the property passed out of the sons, it was not forever lost to them. The appellant had demonstrated her ability to care for it. She was not a waster or spendthrift. She would use no more of it than was required to meet her

simple needs, and when at length she laid down the burden of life it would doubtless return to 'her children.

The *onus probandi* is clearly upon the appellee to overcome the legal and natural presumption that he made the deed for the purpose therein expressed, and to show that he was induced to its execution by the fraudulent or inequitable conduct of the appellant. This requirement he has not met, and the conveyance must be upheld. He was therefore not entitled to demand or receive any part of the proceeds of the sale of the land by the appellant, and the judgment below giving to him such relief can not be sustained.

The demand by the appellee based upon defendant's failure to properly administer upon the estate was denied by the trial court, and, as he has not appealed, we do not consider it.

Of the further demand for an accounting of the rents and profits and of a share in the proceeds of the sale of the nine-acre tract of land, it is sufficient to say that, if ever enforceable, which we do not decide, they are barred by the statute of limitations.

The principles which we treat as controlling in this case are elementary, and there appears to be no occasion for the review or discussion of precedents.

The appellee's petition should have been dismissed, and the cause will be remanded to the district court for that purpose.—*Reversed* and *remanded.*